This dispute arose when Fred Deutsch, the president of Parklex Associates, Inc. (hereinafter the Parklex corporation), which was the general partner of Parklex Associates (hereinafter the partnership), sold the partnership’s sole asset, a building in midtown Manhattan, for the sum of approximately $55,000,000 (see Scher Law Firm v DB Partners I LLC, 27 Misc 3d 1230[A], 2010 NY Slip Op 50975[U] [2010]). After the closing on May 8, 2006, Deutsch and the Parklex corporation distributed some of the sale proceeds to the other partners of the partnership (hereinafter collectively the claimants), and kept $32,300,000. Deutsch directed the transfer of $23,080,351.63 of those proceeds to an account in the name of FAL Associates, LLC, at JP Morgan Chase Private Banking.
The claimants commenced an action in the Supreme Court, Kings County, against Deutsch and his associates, alleging, inter alia, breach of fiduciary duty and conversion (see Parklex Assoc. v Parklex Assoc., 15 Misc 3d 1125[A], 2007 NY Slip Op 50843[U] [2007]). On May 26, 2006, a temporary restraining order was issued enjoining the “secreting or wasting funds in any and all *591 accounts used, maintained or in the name of’ the partnership and the Parklex corporation. On June 29, 2006, the temporary restraining order was continued, enjoining the distribution of funds in “any and all accounts held or maintained in the name of Parklex Associates ... or Parklex Associates Corp. [sic] without further order of this Court.”
On June 23, 2006, Deutsch opened an account in the name of the Parklex corporation at RBC Dain Rauscher, later known as RBC Capital Markets Corporation (hereinafter RBC Capital), a wholly owned subsidiary of Royal Bank of Canada (hereinafter the Bank). On June 26, 2006, $6,104,173.86 was transferred into that account, and on June 27, 2006, Deutsch transferred $4,604,173.86 from that account into another account at RBC Capital in the name of Collateral Acquisition, LLC.
In July 2006, Deutsch opened an account in the name of DB Partners I, LLC (hereinafter DB Partners), at RBC Capital. Deutsch wire-transferred $20,035,823.80 of the $23,080,351.63 on deposit at JP Morgan Chase Private Banking into that account.
In the fall of 2006, the claimants subpoenaed RBC Capital’s account information with respect to (1) $6,104,173.86 wire-transferred into the Parklex corporation’s account on June 26, 2006, and (2) $4,604,173.86 wire-transferred from the Parklex corporation’s account to the account of Collateral Acquisition, LLC, on June 27, 2006. RBC Capital complied with the first subpoena, and, after the motion of the Parklex corporation, inter alia, to quash the second subpoena was denied, RBC Capital complied with the second subpoena.
By agreement dated May 3, 2007, among DB Partners, RBC Capital, and the Bank, DB Partners pledged the funds in the account in its name at RBC Capital as collateral for a line of credit of $17,000,000 issued by the Bank. Thereafter, in July 2009, the petitioner, on behalf of the claimants, obtained a judgment by confession against Deutsch in the total sum of $15,574,599.
In September 2009, the petitioner, on behalf of the claimants, commenced the instant turnover proceeding pursuant to CPLR 5225 (b) to require DB Partners, RBC Capital, and the Bank to turn over to the petitioner the entire balance in the accounts in the name of DB Partners at RBC Capital, including so much of the balance as constituted collateral for the line of credit. The petitioner asserted that the collateral should be turned over to it, because the Bank and RBC Capital had notice of the claimants’ adverse claims pursuant to UCC 8-105 (a) (2).
The Supreme Court, in a decision made after a nonjury trial, explained that RBC Capital had sufficient information to impose *592 a duty upon it to make further inquiry, and its failure to do so constituted “willful blindness.” The court further explained that the knowledge of RBC Capital could not be imputed to the Bank, since the entities operated independently of each other and in their own interests. The court concluded that the Bank made reasonable efforts to insure that no adverse claims existed, and did not have sufficient information to impose a duty of further inquiry. In an order entered July 14, 2011, the Supreme Court, inter alia, in effect, denied so much of the petition as sought to require the turnover of so much of the balance as constituted the collateral for the line of credit (see Scher Law Firm v DB Partners I LLC, 30 Misc 3d 1217[A], 2011 NY Slip Op 50115[U] [2011]). The petitioner appeals, and we affirm the order insofar as appealed from.
The crux of this controversy is whether the Bank had notice of adverse claims pursuant to UCC 8-105 (a) (2), or, if RBC Capital had notice of adverse claims, whether that notice could be imputed to the Bank. UCC 8-105 (a) (2) defines notice of an adverse claim as awareness “of facts sufficient to indicate that there is a significant probability that the adverse claim exists” and deliberate avoidance of “information that would establish the existence of the adverse claim.” In S.E.C. v Credit Bancorp, Ltd. (386 F3d 438, 448 [2004]), the United States Court of Appeals for the Second Circuit described this as the “willful blindness” test, which “does not impose a duty of inquiry or due diligence absent circumstances giving rise to a reasonable suspicion.” The United States Supreme Court has described the willful blindness test as more limited in scope than negligence or recklessness, since “a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts” (Global-Tech Appliances, Inc. v SEB, S.A., 563 US —, —, 131 S Ct 2060, 2070-2071 [2011]).
The evidence established that the Bank did not have awareness of facts sufficient to indicate a significant probability that an adverse claim existed, and that the Bank did not deliberately avoid information that would establish the existence of an adverse claim. While the Bank did not investigate the source of the funds constituting collateral for the line of credit, the source of those funds was money already on deposit; when the Bank agreed to the line of credit in May 2007, the funds had been on deposit for about 10 months, and no subpoena had been issued with respect to DB Partners. Under the circumstances, there was no basis for the Bank to harbor a reasonable suspicion of an adverse claim against those funds.
*593 The evidence in the record also supported the conclusion of the Supreme Court that any notice to RBC Capital of an adverse claim could not be imputed to the Bank with respect to the collateral in issue. On this point, evidence was elicited at the trial that clients of RBC Capital were not also clients of the Bank, which provided different services. RBC Capital provided financial advice, and portfolios of assets for investment, while the Bank provided lines of credit, with “separate due diligence, separate bank credit analysis, separate bank underwriting.” Thus, although RBC Capital and the Bank worked together to provide different services to each other’s clients, they were two separate entities with separate interests.
Accordingly, the Supreme Court properly awarded the Bank the collateral for the amount due and owing to it.
The petitioner’s remaining contentions are either without merit or not properly before this Court. Angiolillo, J.P., Dickerson, Belen and Hall, JJ., concur.